FILED
2016 Feb-19  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MATTHEW POE,              )
                             )
        Plaintiff,       )
                             )
    vs.                 )        2:14-cv-1875-LSC
                             )
CAROLYN W. COLVIN,    )
Commissioner of Social Security,  )
                             )
       Defendant.    )

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Matthew L. Poe, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Poe timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Poe was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a college education. (Tr. at 163.) His past work experiences include employment as a stock clerk and a driver at a check publishing company and a substitute teacher. (Tr. at 45.) Mr. Poe claims that he

became disabled on December 17, 2008, due to hypertension, pain caused by gout, depression, dizziness, confusion, and fatigue. (Doc. 9 at 2).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Poe has not engaged in SGA since November 4, 2010, the application date. (Tr. at 12.) According to the ALJ, Plaintiff's hypertension, obesity, and unspecified ankle / joint pain are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 13.) The ALJ determined that Mr. Poe has the following RFC: to perform light work as defined in 20 CFR § 416.967(b) except that he requires the option to alternate between sitting and standing every thirty minutes; he can occasionally operate foot controls; he can frequently handle and finger; and he must avoid exposure to extreme heat and cold, dangerous moving machinery and unprotected heights. (Tr. at 15.)

According to the ALJ, Mr. Poe is able to perform his past relevant work as a substitute teacher as it is generally performed. (Tr. at 19.) In the alternative, the ALJ found Plaintiff can perform a significant number of jobs in the national economy, such as a mail clerk, an assembler, and an office helper. (Tr. at 19-20.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, since November 4, 2010, the date the application was filed." (*Id*. at 20.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec*., 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1158 (11th Cir. 2004)).   This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).   Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Plaintiff contends the ALJ's decision should be reversed and remanded for four separate reasons: substantial evidence does not support the ALJ's RFC

determination; the ALJ improperly evaluated his treating physician's opinion; substantial evidence does not support the ALJ's decision that he can return to his past relevant work; and the ALJ erred in discounting his subjective complaints of pain. Each argument is addressed in turn.

## A. RFC Determination

Plaintiff claims that the ALJ's RFC assessment is "simply conclusory and does not contain any rationale or reference to the supporting evidence." (Pl.'s Br. at 12-14.) Plaintiff specifically argues that the ALJ did not comply with Social Security Ruling ("SSR") 96-8p, that there should have been some formal RFC evaluation from a medical source, and that the RFC should have included the additional limitations found by Plaintiff's physician Dr. Towles-Moore. (Pl.'s Br. at 13-14).

A claimant bears the burden of proving he was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ considered Plaintiff's disability claim using the five-step sequential evaluation process. To determine if Plaintiff could perform his past relevant work at step four or other work at step five, the ALJ had to assess Plaintiff's RFC. An individual's RFC represents the most he can still do, despite his limitations, in a work setting.  20 C.F.R. § 404.1545(a)(1).  In order to determine an individual's

RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations. *Id.* § 404.1545(a)(3).   Moreover, the evaluator considers not only the impairments classified as "severe" but the "limiting effects" of all conditions when making a judgment about an individual's RFC. *Id.* § 404.1545(e).   A reviewing court will affirm the ALJ's RFC assessment if it is supported by the objective medical evidence. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Based on his consideration of the relevant evidence, the ALJ found Plaintiff could perform light work, but with some additional limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945, 416.946(c); *see also* 20 C.F.R. § 416.967(b) (defining light work). Specifically, the ALJ found Plaintiff required the option to alternate between sitting and standing every thirty minutes; could occasionally operate foot controls; could frequently handle and finger; and must avoid exposure to extreme cold and heat, dangerous moving machinery, and unprotected heights.

Because the ALJ properly assessed all of Plaintiff's impairments when formulating Plaintiff's RFC, and considered Plaintiff's medical records as a whole, Plaintiff's arguments are without merit. As to Plaintiff's first argument, he contends that the ALJ's decision had to include a function-by-function analysis

pursuant to SSR 96-8p. SSR 96-8p provides that an RFC assessment must first identify an individual's functional limitations and assess his work-related abilities on a function-by-function basis prior to expressing the RFC in terms of general exertional levels. *See* SSR 96-8p, 1996 WL 374184, at *3. Given the ALJ's citation to the definition of light work in the regulations, the ALJ's inclusion of exertional and nonexertional limitations in the RFC finding, and the ALJ's discussion of the record, the ALJ was not required to specifically discuss Plaintiff's ability to perform each of the exertional demands associated with light work, contrary to Plaintiff's contention. *See Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009) (holding that discussing the claimant's medical records and citing a regulation that defines the exertional demands of the RFC satisfies the function-by-function requirement).

As to Plaintiff's second argument, which is that the ALJ should have relied on a medical source statement to formulate his RFC, the Eleventh Circuit has noted that a formal RFC assessment from a physician is not required in every case where other evidence in the record is sufficient to support the ALJ's disability determination. *See Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014). This is because under the Social Security Act, the Commissioner is responsible for deciding whether a claimant is disabled and at the hearing level, has delegated that responsibility to the ALJ. *See* 42 U.S.C. § 405(a), (b)(1); 20 C.F.R. §§ 404.929,

404.944, 404.946, 404.953, 404.955. The agency's regulations specifically provide that the final responsibility for determining RFC lies with the ALJ. *See* 20 C.F.R. § 416.946(c); *see also* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3); SSR 96-5p, 1996 WL 374183, at *2 (S.S.A.). Any requirement that an ALJ's RFC finding must be based on a physician's medical source statement would thus confer upon the physician the authority to determine the RFC, and "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, at *2; *see Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) ("[A]n opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner . . . ."); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors.").

Moreover, a physician's medical source statement is different from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 416.913(b), (c), 416.945, 416.946(c). SSR 96-5p clarifies that even though an ALJ's RFC assessment may adopt all or a part of a physician's medical source statement, they are not the same thing:

> A medical source statement is evidence that is submitted to [the Commissioner] by an individual's medical source reflecting the

> source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374183, at *4; *see also* 65 Fed. Reg. 11,866, 11,869 (Mar. 7, 2000) (discussing difference between a medical source statement about what a claimant can still do and an RFC assessment). Since an RFC assessment is not a medical assessment, the ALJ did not need any doctor's opinion regarding Plaintiff's functional limitations before assessing his RFC. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-24 (11th Cir. 2007) (rejecting Green's argument that without a medical source statement from her treating physician, the ALJ could not form an RFC and ruling that the ALJ could rely on the other non-opinion evidence of record to support his RFC finding).

In this case, the ALJ did not need a medical source statement from a physician because he had enough evidence before him to make a fully-informed disability determination. The record reveals that Plaintiff was diagnosed with high blood pressure in 2009, for which he was prescribed medication, exercise, and a low fat diet. (Tr. at 240-42.) He also has hypertension, but the record shows that it is controlled with medication, exercise, and diet. (Tr. at 253-55.) The medical records described his hypertension as "stable," "benign," or "controlled." (Tr. at 254,

262, 292, 304.) Plaintiff also complained of gout and ankle pain, which the ALJ considered in assessing the RFC. (Tr. at 14-17). However, while the medical records show that Plaintiff complained of pain in his extremities, he had no deformities or edema. (Tr. at 254, 259, 262, 309). During a June 2009 visit, Plaintiff complained of arthritis in his left shoulder, but reported that over the counter Tylenol helped. (Tr. at 256). Physicians noted a compensated gait and that both ankles had pain with palpation, but no edema was present, and examiners did not perform any strength or range of motion testing. (Tr. at 305, 309, 314-16). Plaintiff was prescribed medication for his ankle pain. (Tr. at 283, 303-05, 309, 314-16). Thus, while Plaintiff had tenderness in his ankle, the records do not show that it caused limitations in strength or range of motion, and the ALJ's RFC assessment, which reduced him in terms of his ability to stand and walk and use foot controls, accounts for this mild limitation. (Tr. at 15.)

The ALJ also acknowledged that Plaintiff had been diagnosed with obesity, referenced SSR 02-1p, and determined that his obesity was a severe impairment. In so doing, the ALJ complied with all appropriate regulations and case law, as the Eleventh Circuit has held an ALJ properly considers the claimant's obesity when he: (1) acknowledged the claimant's diagnosis of obesity; (2) referenced SSR 02-1p; and (3) determined the obesity was a severe impairment. *See Castel*, 355 F. App'x

at 264. The ALJ noted that Plaintiff barely qualifies as obese, as his body mass index (BMI) was 30.9, with 30 and over typically representing obesity. (Tr. at 17). Regardless, the ALJ did find that Plaintiff's obesity constituted a severe impairment that could exacerbate his physical limitations. (Tr. at 17). However, the ALJ specifically stated: "there is no evidence that this impairment caused any further limitations than those determined herein nor was it mentioned by the claimant's health care providers." (Tr. at 17). Thus, to the extent Plaintiff takes issue with the ALJ's treatment of his obesity diagnosis, he has failed to meet his burden of establishing his obesity had any effect on his functional limitations.

Plaintiff also complains that the ALJ did not sufficiently account for his mental limitations in his RFC. However, while Plaintiff complained of anxiety, there is no medical evidence whatsoever that shows Plaintiff ever sought or obtained treatment for this anxiety. (Tr. at 240, 261). In fact, when he was offered medication for anxiety, Plaintiff declined. (Tr. at 261). Other treatment notes show Plaintiff had no evidence of anxiety on examination, his memory was intact, and he was oriented. (Tr. at 254, 259, 305, 309). During a March 2009 consultative examination, Robert Summerlin, Ph.D., found Plaintiff to be oriented in regards to person, place, time, and circumstance, able to repeat most items immediately after hearing them, that his remote memory was intact, with abstract thinking, fund of

general information, computational skills, and vocabulary all reflective of an individual with average intelligence and post-high school education. (Tr. at 319). Dr. Summerlin concluded that while Plaintiff's affect was somewhat dramatic and reflected anxiety, he could find no evidence of a psychological disorder that would cause Plaintiff to be unemployable. (Tr. at 319). In January 2011, Robert Estock, M.D., reviewed the medical record and found that Plaintiff had the non-severe impairment of anxiety, with only mild restrictions in daily living, mild difficulties in maintaining social functioning, and mild difficulties in concentration, persistence, or pace. (Tr. at 268, 278). As seen from the record, there is simply no evidence supporting a more severe mental limitation than what the ALJ found.

In sum, there was substantial evidence from the medical record that supports the ALJ's RFC determination, and a medical source statement was not needed. As to Plaintiff's argument with regard to Dr. Towles-Moore's opinion, it is addressed *infra*.

### B. Treating Physician's Diagnosis

Plaintiff contends that the ALJ improperly gave little weight to his treating physician's opinion. (Doc. 9 at 3.) A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440) (internal quotations

omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the

responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Towles-Moore, a physician at Quality of Life Health Services, completed a Physical Capacities Evaluation and Functional Capacity Evaluation of Plaintiff in 2012. (Tr. at 296-300.) She checked the box stating that Plaintiff "does not have the maximum physical capacity to perform the activities described in any of the above categories on a sustained basis." (Tr. at 296). She listed Plaintiff's functional capacities as far less than described by the ALJ: standing/walking for 2 hours at a time and 4 hours total max during the day, sitting for 2 hours at a time, and 4 hours max during the day, driving max 30 minutes at one time, lifting/carrying a max of 10 pounds frequently, and simple grasping, pushing, and pulling, with occasional bending, squatting, kneeling, and reaching. (Tr. at 299-300). She also checked the boxes that list Plaintiff's pain as a 3 on a maximum of 4 scale, and that Plaintiff has never been prescribed treatment for this type of pain. (Tr. at 297-98). Lastly, she stated that Plaintiff should avoid working in hot environments, and requires a cane. (Tr. at 300). Dr. Towles-Moore's evaluations essentially placed Plaintiff at an exertional level significantly less than sedentary.

The ALJ expressly gave Dr. Towles-Moore's opinion little weight because it contrasted with the other evidence of record, because it was inconsistent with the

overall evidence and inconsistent with the treatment notes from Quality of Life Health Services, because there were no explanations given for the conclusions, and because the treatment notes indicated that Plaintiff was actually seen by a nurse practitioner, Kristi Frances, CRNP, and not consistently seen by Dr. Towles-Moore. (Tr. at 18.)

Good cause exists for the ALJ to have discounted Dr. Towles-Moore's opinion. Dr. Towles-Moore does not provide any explanation or justification for her suggested limitations. The evaluation forms themselves lack any explanations, and the medical record contains no separate examination or report by Dr. Towles-Moore that substantiate her findings. The lack of objective medical findings to support her opinions suggests that she relied on Plaintiff's subjective complaints in formulating her opinions on the evaluation forms. However, good cause has been found to support an ALJ's discounting of a treating physician's opinion when it is based primarily on the plaintiff's subjective complaints to the doctor, and not on objective examination findings. *See Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (one component of good cause for the ALJ to discount the opinion of a treating physician was that the physician "relied too significantly on [the plaintiff's] subjective reports"); *Crawford*, 363 F.3d at 1159-60 (not error to discount treating physician's opinion when it was based primarily on the plaintiff's

subjective complaints of pain). In addition, and as discussed below, substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling pain and other symptoms were not credible. (Tr. at 16-18).

Aside from being conclusory, Dr. Towles-Moore's severe findings are not supported by the evidence in the record. As stated above, the medical evidence documents hypertension that is well controlled with medications, exercise, and diet. (Tr. at 240, 241, 242, 257, 262-63, 283, 293, 302, 307). Doctors prescribed medications to Plaintiff for his hypertension, including Atenolol and Lisinopril-Hydrochlorothiazide, and medical records describe his hypertension as "stable," "benign," or "controlled." (Tr. at 254, 262, 292, 304, 307, 314-15). Plaintiff's gout and ankle pain were also treated with medication. (Tr. at 254, 259, 262, 309, 314-16). While Dr. Towles-Moore described Plaintiff's pain as a 3 out of 4, the only records reflecting pain are a June 2009 visit, where Plaintiff stated that over-the-counter Tylenol helped (tr. at 256), and in August and September 2012, when Plaintiff began using a cane. (Tr. at 303-06, 307-10, 314-15). Treatment notes from the August and September 2012 visits show that Plaintiff presented with pain in ankles, but examiners performed no additional strength or range of motion testing, and only prescribed Ultram for the pain. (Tr. at 303-06, 307-10, 314-15). The objective medical evidence simply does not demonstrate pain levels to the degree

described by Dr. Towles-Moore. Moreover, Plaintiff reported that he prepared small meals for himself, performed "very light" housework, mowed the lawn weekly, went grocery shopping, attended church weekly, occasionally attended a men's group, and routinely went out and drove his car. (Tr. at 193-98). During a consultative examination with Dr. Summerlin, Plaintiff reported that he is able to bathe, dress, and groom himself without assistance, and helps with household chores such as cooking, cleaning, laundry, yard work, and home repairs. (Tr. at 319).

Furthermore, as the ALJ noted, Dr. Towles-Moore did not consistently treat Plaintiff but rather a nurse practitioner did, and thus the physician did not have any "ongoing treatment relationship" with Plaintiff sufficient to accord her status as treating physician. *See* 20 C.F.R. § 416.902; *Crawford*, 363 F.3d at 1160; *see also, e.g., Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("The question is whether [the physician] had the ongoing relationship with [the claimant] to qualify as a treating physician at the time he rendered his opinion.").

Finally, Plaintiff relies upon *McClurkin v. SSA, Comm'r*, _ F. App'x _, 2015 WL 5166045 (11th Cir. Sept. 4, 2015), which found it was reversible error for the ALJ to have failed to articulate either the weight given to a non-treating physician's opinion or the grounds for discounting his opinion. This case is wholly inapposite,

as the ALJ both specifically stated that he was giving Dr. Towles-Moore's opinion little weight and articulated sufficient reasons for doing so.

## C. Finding that Plaintiff Could Perform Past Work

Plaintiff next contends the ALJ erred in finding he could return to his past relevant work as a substitute school teacher, because he is incapable of performing the job as he actually performed it. (Pl.'s Br. at 19-22). Specifically, Plaintiff notes that he was a substitute teacher over 15 years ago, and states that the fact that his medications cause dizziness, drowsiness, and confusion apparently prevent him from being able to perform this type of work. (*Id.*) However, Plaintiff also correctly notes in his brief that because the ALJ continued the five-step sequential evaluation process and determined that he could perform other jobs in the national economy, any such error in determining Plaintiff's ability to perform his past relevant work is harmless. (Pl.'s Br. at 22). Indeed, the ALJ, with the aid of a vocational expert, found that Plaintiff could also work a number of jobs in the national economy, such as mail clerk, assembler, and office helper. (Tr. at 19-20). Plaintiff does not challenge these findings whatsoever. Thus, the Commissioner has satisfied her burden of producing other work that Plaintiff could perform, and Plaintiff fails to prove why he cannot perform these jobs. *See* 20 C.F.R. § 416.920.

In any event, while Plaintiff's arguments target why he cannot perform his past relevant work as he actually performed it, he fails to establish why he could not perform the job of substitute teacher as it is generally performed. (Tr. at 19-20). Social Security Ruling 82-61 provides that a claimant can return to past relevant work if he can perform the specific job he performed, either in the manner he performed it, or as it is usually performed in the national economy. Additionally, a claimant bears the burden of proving he cannot perform his past relevant work either as he performed the job or as the job is generally performed in the national economy. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991). As noted by the ALJ, the VE testified that an individual of the same age as Plaintiff, with the same education, past work experience, and RFC could perform the job of substitute teach as it is generally performed. (Tr. at 19). Again, Plaintiff does not challenge this finding whatsoever in his brief. Thus, Plaintiff's arguments as to why he cannot perform his past relevant work are unavailing.

## D. Credibility Determination

Plaintiff also contends the ALJ erred in determining his credibility with regard to his statements concerning his joint pain and side effects caused by his medication. (Pl.'s Br. at 23-30.) Specifically, Plaintiff testified as to severe pain and explained that his blood pressure medicine aggravates his gout problems and causes

dizziness and drowsiness. (Tr. at 38-39.) He testified that he has a difficult time concentrating and doing simple tasks. (Tr. at 39.) He further stated that gout is in his hands, shoulders, and ankles and causes him to use a cane to get around, and that even with the medication for gout, he still has extreme pain and problems with balance. (Tr. at 39-40.)

The Eleventh Circuit established a three-part pain standard that applies whenever a plaintiff asserts disability through testimony of pain or other subjective symptoms. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the objective evidence does not confirm the severity of the plaintiff's alleged symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on his ability to

work. 20 C.F.R. § 416.929(c), (d). The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* SSR 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Plaintiff met the first prong of the Eleventh Circuit's pain standard, but noted that he was not provided with evidence that confirmed the severity of the alleged pain or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the pain. (Tr. at 17.)

Substantial evidence supports the ALJ's credibility decision here. The ALJ noted that the last time Plaintiff worked was in October of 2004, and that Plaintiff testified that he quit his job due to hypertension, gout causing pain in his hands, shoulders, and ankles, and side effects from his medication. (Tr. at 15). However, after reviewing Plaintiff's medical records, the ALJ found that the first mention of pain was in June 2009, and Plaintiff reported that his pain was relieved by over-the-counter Tylenol medication. (Tr. at 256). The only other mentions of pain came in August and September of 2012, when Plaintiff reported his ankle pain and use of cane. (Tr. at 303-06, 307-10, 314-15). These reports of ankle pain came well after Plaintiff stopped working, and there is nothing in the record to explain the lack of employment from 2004 to 2012, which undermines Plaintiff's credibility. (Tr. at 16.)

Further, while Dr. Towles-Moore did opine that Plaintiff required a cane, nothing else in the medical record suggests that Plaintiff's condition had deteriorated to the degree where Plaintiff required a cane for continuous use. (Tr. at 314-15). Moreover, as the ALJ found, Plaintiff's reports of daily activities, such as performing yard work and home repairs, mowing the lawn weekly, and routinely driving himself, are able to be done without the use of a cane. (Tr. at 193-97, 268, 278). *See e.g.*, 20 C.F.R. § 416.929(c)(3)(i); *Dyer*, 395 F.3d at 1209, 1211-12 (holding

that substantial evidence supported the ALJ's rejection of a claimant's subjective complaints where the record indicated that the claimant's daily activities included reading, watching television, shopping, and other activities).

Additionally, as the ALJ found, while Plaintiff alleged his hypertension medication caused confusion, dizziness, and drowsiness, most of the records do not show that Plaintiff ever complained of these side effects to his prescribing doctors. (Tr. at 16, 240, 241, 242, 257, 262-63, 293, 302, 307, 314-15). A claimant cannot prove a disability solely through unsupported testimony concerning side effects. *See Walker v. Comm'r of Social Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (holding claimant must introduce evidence supporting her claim that her medication causes side effects); *Gantea v. Comm'r of Soc. Sec.*, 380 F. App'x 950, 951 (11th Cir. 2010) (finding the ALJ was entitled to discredit claimant's complaints where the doctors who prescribed the medications did not state side effects limited his ability to work).

Because substantial evidence supports the ALJ's credibility determination, it is not due to be overturned.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Poe's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law. A separate order will be entered.

DONE and ORDERED on February 19, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704